E. H. MARTINDALE et al., Appellants,

v.

L. E. MARTINDALE et al., Appellees.

No. 7238.

Court of Civil Appeals of Texas.

Amarillo.

March 18, 1963.

Rehearing Denied April 15, 1963.

T. R. Odell and C. L. Harris, Lubbock, for appellants.

Hackney & Crawford, Brownfield, for appellees.

NORTHCUTT, Justice.

L. E. Martindale, Lee A. Martindale and Willie Mae Hedgpeth, as plaintiffs, brought this suit against E. H. Martindale, Minnie Frederickson, Lottie Johnston and Maggie Lambert, as defendants. The plaintiffs and defendants were the surviving children of Mrs. M. H. Martindale. W. I. Martindale and Lee Simpson Martindale were grandsons of Mrs. M. H. Martindale but were not parties to this suit but were shown to be heirs entitled to receive their portion of the M. H. Martindale estate if plaintiffs were successful in this suit. Plaintiffs, defendants, and the two grandsons were the sole surviving heirs of Mrs. M. H. Martindale. It was alleged by the plaintiffs that Mrs. M. H. Martindale died intestate on February 28, 1959, and that no administration was had on her estate and that none was necessary and that on her death she was seized and possessed of certain real estate (which is the property here involved) and various money and assets the exact nature and extent being unknown to the plaintiffs but well known to the defendants, especially E. H. Martindale.

Mrs. M. H. Martindale and her husband, J. A. Martindale, were the mother and father of plaintiffs and defendants and the grandparents of W. I. Martindale and Lee Simpson Martindale. J. A. Martindale and wife, Mrs. M. H. Martindale executed their joint will leaving all their property to the survivor. J. A. Martindale died in 1932 and his will was probated giving all the property to Mrs. M. H. Martindale. It was the contention of plaintiffs that during

the life of J. A. Martindale he made an agreement with Mrs. Martindale that they would, on the death of both, leave their property and estate to all the children equally.

In 1934 Mrs. M. H. Martindale deeded 80 acres of land to her son E. H. Martindale, and the trial court instructed the jury to return a verdict for E. H. Martindale as to this 80 acres because of the statutes of limitation, no objections were made to such instructions, and no point here raised as to this 80 acres, therefore this deed will not be considered further herein. On July 9, 1940, Mrs. M. H. Martindale executed deeds to all of her real estate to the defendants, being the property here involved, and did not give the plaintiffs anything. One of the deeds was recorded January 25, 1945, and the others in 1957.

It was the contention of the plaintiffs that Mrs. M. H. Martindale on July 9, 1940, at the time she executed the deeds in question, did not have sufficient mental capacity to know and understand the nature and effect of her act in executing the deeds in question, and this was known to the defendants; that the defendants knowing the condition of Mrs. M. H. Martindale immediately after a family tragedy, and her mental and physical infirmities, and by use of such knowledge and by fraudulent schemes between them and by over-reaching, misrepresentations and undue influence exerted by them over Mrs. M. H. Martindale and completely overcoming any free agency or will of Mrs. Martindale, and substituting the free agency and will of defendants therefor, that defendants acting individually and together induced and caused her to execute the deeds of conveyance of all the property here in question. Plaintiffs further contend in the alternative that the property in question was under both a resulting and constructive trust and for the benefit of the children of M. H. and J. A. Martindale because of an agreement made by M. H. Martindale and J. A. Martindale to divide the property equally between all their children.

The case was submitted to a jury upon seven special issues. In answer to these issues the jury found that on July 9, 1940, the time the deeds in question were executed, that Mrs. M. H. Martindale did not have sufficient mental capacity to know and understand the nature and effect of her act in executing the deeds in question; that the defendants, at the time the deeds were executed, knew Mrs. Martindale did not have sufficient capacity to know and understand the nature and effect of her act in executing the deeds in question; that the making and execution of the deeds by Mrs. Martindale on July 9, 1940, were procured by undue influence on the part of the defendants acting in concert together or by one of them; that the joint will of J. A. and M. H. Martindale introduced in evidence was executed by them pursuant to an agreement between them that the survivor of them would divide or will their estate equally among their children and that neither J. A. Martindale nor Mrs. Martindale revoked or changed such agreement prior to the death of J. A. Martindale in 1932. The last two issues concern the value of the crop rentals for the years 1959, 1960, and 1961, being the crops gathered after the death of Mrs. M. H. Martindale.

Judgment was rendered upon the verdict of the jury decreeing the deeds purportedly executed by Mrs. M. H. Martindale on July 9, 1940, purportedly conveying the lands to the respective defendants were null and void and cancelled, annulled, and set aside and held for naught; then decreed that the three plaintiffs and four defendants each were adjudged the owner of an undivided ⅛ interest in and to each of the tracts of land in question and that the remaining ⅛ interest therein belonged to and adjudged in the two grandsons being an undivided 1/16 interest each. The judgment further decreed as to the interest in the rents for the years 1959, 1960, and 1961. From that judgment the defendants perfected this appeal.

Appellants first present this appeal upon eighteen assignments of error and then

present what is termed a fundamental error. Since all of their eighteen assignments of error except points six, seven, and twelve concern no evidence, the insufficiency of the evidence, and against the great weight and preponderance of the evidence as to be manifestly wrong, we will consider all fifteen points together. If the evidence was sufficient to sustain the findings of the jury that Mrs. Martindale did not have sufficient mental capacity to execute the deeds on July 9, 1940, or that the deeds were procured by undue influence on the part of the defendants acting in concert together or either of them or that the joint will of J. A. Martindale and Mrs. M. H. Martindale was executed by them pursuant to an agreement between them that the survivor of them would divide or will the combined estate equally among their children and that neither J. A. Martindale or Mrs. M. H. Martindale revoked or changed such agreement prior to the death of J. A. Martindale in 1932, then either of such findings would justify the holding of the court in setting aside the deeds.

In determining whether there was undue influence each case depends largely on its own facts and circumstances. The trial court gave a proper definition of undue influence. It is stated in the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034 as follows:

"Generally speaking, undue influence is such influence or dominion as exercised at the time, under the facts and circumstances of the case, which destroys the free agency of the testator, and substitutes in the place thereof the will of another. Undue influence has also been defined as that dominion acquired by one person over the mind of another which prevents the latter from exercising his discretion, and which destroys his free agency. Also, undue influence has been defined as 'that which compels the testator to do that which is against his will from fear, the desire of peace, or some feeling which he is unable to resist.' 42

Tex.Jur., p. 792, sec. 2, and authorities there cited."

It is further stated in the Long case as follows:

"It is rarely possible to prove undue influence by what is generally known as direct testimony. Undue influence is usually a subtle thing, and by its very nature it usually involves an extended course of dealings and circumstances. Usually a person charging undue influence must substantiate such charges by circumstances extending over a considerable length of time. It is therefore the settled rule that undue influence can be established by what is known as circumstantial, as well as direct, evidence. Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759; Bergstedt v. Bender, Tex.Com.App., 222 S. W. 547."

After J. A. Martindale died, E. H. Martindale, one of the defendants herein, moved in the home with his mother and immediately took over full control of his mother's affairs, then in 1934 secured a deed from his mother for 80 acres of land without a reservation of a life estate and had the same recorded. He testified that he had authority to do anything with her business that he wanted to, even giving checks on her bank account without conferring with her. There was undisputed testimony that E. H. Martindale had boasted that whatever he wanted from his mother he could get and that all he had to do was to tell his mother what he wanted, that he was managing the place, that he was boss of the place and that was what he was going to do or he would leave her alone and that was something she could not stand and that was what was always said until he had his own way.

On July 2, 1940, a daughter of Mrs. M. H. Martindale committed suicide by hanging herself and she was buried on July 5, 1940. On July 9, 1940, the deeds here in question were executed. The deeds were

not delivered but were placed in the bank lock box used by E. H. Martindale and his mother. Under this record that was the last time Mrs. M. H. Martindale had anything to do with the deeds. It is to be noticed the deed for 30 acres of land deeded to E. H. Martindale July 9, 1940, was recorded January 25, 1945, but the other deeds dated July 9, 1940 were not recorded until 1957. There is also evidence that E. H. Martindale delivered the other deeds dated July 9, 1940 after one of his sisters, one of the defendants herein, threatened to tell what she knew if E. H. Martindale did not deliver the deeds. There is nothing in this record to show that Mrs. M. H. Martindale ever delivered the deeds personally.

Before the trial of this case, the deposition of E. H. Martindale was taken and he testified he was present when his mother executed the deeds on July 9, 1940, and that the deeds were explained to her. On the trial one of his sisters testified that E. H. asked her to take his mother to town and she did so and was the only one with her mother at the time the deeds were executed. Then on the trial, E. H. testified he was not with his mother when she signed the deeds and could not say why he testified as he did by deposition.

On July 21, 1950, ten years after the deeds in question were executed and were still in Mrs. Martindale's lock box, except the one removed and filed for record deeding 30 acres of land in Haskell County to E. H. Martindale, Mrs. Martindale gave an oil and gas lease upon the Terry County land. Taxes upon the land were also paid after 1940 from Mrs. M. H. Martindale's bank account. There is other testimony to show Mrs. Martindale feared her son. All the evidence shows the mother loved all of her children equally and naturally she was upset and grieved by the fact her daughter had committed suicide and was buried only three or four days before their mother was taken to town to execute the deeds.

▮ We have mentioned only a portion of the evidence we think would justify the jury's verdict as to undue influence and deem it unnecessary to pass upon the question of the mental capacity of Mrs. Martindale at the time she executed the deeds. The jury having found undue influence we are required to indulge the presumption that the jury believed all of the probative evidence tending to sustain its finding and must view the evidence most favorable to the verdict. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Griffin v. Camp, Tex. Civ.App., 272 S.W.2d 129 (NRE). We are of the opinion and so hold that the evidence was sufficient to uphold the finding of the jury as to undue influence. The rules as to undue influence imply substantially alike to wills, deeds, and other instruments. Self v. Thornton, Tex.Civ. App., 343 S.W.2d 485 (NRE); Guedry v. Jordan, Tex.Civ.App., 268 S.W. 191 (NWH); Shelton v. Shelton, Tex.Civ.App., 281 S.W. 331 (NWH).

▮ Defendants objected to the court's charge in the submission of issues six and seven for the reason that the plaintiffs were not entitled to any rents or revenues off of the land in question because the land was held by defendants under deeds duly recorded and the title was at all times in 1959, 1960, and 1961 in their possession under a deed and that the title to said property was vested in the defendants at all times during that period. Then appellants' assignments of error six and seven state the court erred in submitting those issues over the timely objections of the defendants. These assignments are to the effect that because of the deeds even if they were executed under undue influence the defendants would be entitled to the rents and revenues on the land. We cannot agree with this contention. We think the rents and revenues would be due to the ones entitled to the land in proportion to their interest in the land.

▮▮ By appellants' assignments of error 12 they contend the court erred in admitting the evidence of Doctor Edwards

concerning a conversation he had with Mrs. Martindale on March 31, 1953. The essence of his testimony was that Mrs. Martindale stated to him she was worried over the children fussing about the division of the property and that she and her husband had agreed the property was to be divided equally between all of their children and she thought that was what she had done. All of the evidence shows how close the doctor and Mrs. Martindale were and the witnesses thought that whatever Dr. Edwards said was a fact. We think this evidence was admissible to show that she thought she was dividing the property equally between all of her children as she and her husband had agreed to do. Her mental condition prior to or subsequent to the time the deeds were executed was admissible and the doctor thought her mental condition was all right when she told him what she did. In other words, she had been misled. It is stated in the case of Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849 as follows:

> "Of course, the state of mind alleged by respondents had to be shown to exist when Mrs. Waite executed the deed on Oct. 1, 1949, but it does not follow that relevant evidence bearing on mental competency is restricted to the time a given act is done; that issue may be determined upon testimony as to the actor's mental condition either prior or subsequent to the time the act in question is done. Self v. Becker, Tex.Civ. App., 195 S.W.2d 701, er. ref. N.R.E. And as already indicated, we think there is a wealth of testimony in the record, which, as accepted by the jury, established Mrs. Waite's mental incapacity on Oct. 1, 1949."

See also Gaston v. Bruton, Tex.Civ.App., 358 S.W.2d 207 (writ dismissed).

■ Evidence of the declaration of Mrs. M. H. Martindale is admissible to prove the joint will made by her and J. A. Martindale was executed pursuant to an agreement to divide the property equally between all the children. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Pullen v. Russ, Tex.Civ.App., 226 S.W.2d 876.

■ The appellants contend it was fundamental error for the court to enter judgment for the two minor grandsons because they were not parties to the suit and also urged other matters as being fundamental, but we have disposed of those matters here above. The pleadings and the evidence showed they were heirs of Mrs. Martindale and they were the sons of Simpson Martindale, a deceased son of Mr. and Mrs. Martindale. If it should be said that such decree was erroneous, it would be harmless error since they were entitled to inherit a portion of the land only if said deed should be set aside.

We are of the opinion there was an abundance of evidence to show undue influence as found by the jury. All of appellants' assignments of error are overruled. Judgment of the trial court is affirmed.

CHAPMAN, J., not participating.